1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MANUEL S. ABRAHAMSON,

        Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

        Defendant.

No.  2:14-CV-00308-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

      Before the Court are the parties' cross-motions for summary judgment, **ECF Nos. 11, 12**.  Sara Herr-Waldroup represents Manuel S. Abrahamson ("Plaintiff" or "Claimant") and Special Assistant United States Attorney Benjamin Groebner represents Defendant Commissioner of Social Security (the "Commissioner").  Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C §§ 1381- 1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed.  For the reasons set forth

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 1**

below, the Court grants Defendant's Motion for Summary Judgment and directs

entry of judgment in favor of Defendant.

## I.    Jurisdiction

Plaintiff filed an application for SSI benefits on February 9, 2011. Tr. 153-

159.  Plaintiff's application was initially denied on May 26, 2011, Tr. 74-79, and

on reconsideration on September 14, 2011, Tr. 80-94.  Plaintiff filed a written

request for hearing on October 20, 2011.  Tr. 117-19.  On October 29, 2012,

Administrative Law Judge ("ALJ") Moira Ausems held a hearing in Spokane,

Washington.  Tr. 39-74.  On February 1, 2013, the ALJ issued a decision finding

Plaintiff ineligible for SSI payments.  Tr. 22-33.  The Appeals Council denied

Plaintiff's request for review on May 12, 2014, Tr. 6-8, making the ALJ's ruling

the "final decision" of the Commissioner.  On July 2, 2014, Plaintiff requested a 45

day extension to file a civil action, Tr. 1-4, which the Appeals Council granted on

August 8, 2014.  Plaintiff timely filed the present action on September 19, 2014,

and accordingly, Plaintiff's claims are properly before this Court pursuant to 42

U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT** ~ 2

1   can be expected to last for a continuous period of not less than twelve months."  42

2   U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

3   under a disability only if his or her impairments are of such severity that the

4   claimant is not only unable to perform previous work, but cannot, considering

5   claimant's age, education and work experience, engage in any other substantial

6   gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

7   1382c(a)(3)(B).

8        The Commissioner has established a five-step sequential evaluation process

9   for determining whether a claimant is disabled within the meaning of the Social

10  Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

11  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

12       Step one inquires whether the claimant is presently engaged in "substantial

13  gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

14  activity is defined as significant physical or mental activities done or usually done

15  for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

16  substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

17  404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

18       Step two asks whether the claimant has a severe impairment, or combination

19  of impairments, that significantly limits the claimant's physical or mental ability to

20  do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 3**

impairment is one that lasted or is expected to last for at least twelve months, and must be proven by reference to objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there.  *Id.*  If the claimant cannot perform past relevant work, the ALJ must proceed to step five.

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 4**

claimant's age, education, and work experience.  *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and are only briefly summarized here. Plaintiff was born on November 19, 1969, and was 42 years-old on the date of the hearing. Tr. 187. Plaintiff obtained a GED in the "mid 1990's," Tr. 44, and has worked as a construction worker and general

1  laborer in various settings with a range of medium to very heavy exertional

2  demands, Tr. 59.

3       Plaintiff alleges he is disabled primarily because of injuries resulting from

4  two significant motor vehicle accidents.  The first accident occurred in May of

5  2007.  Tr. 526.  Plaintiff sustained a left midshaft femur fracture by traumatic

6  impalement, resulting in a "massive hemorrhage" from his left thigh, Tr. 526, and a

7  right distal tibia fracture, Tr. 535.  Infection in Plaintiff's left leg required surgical

8  intervention on two occasions, once in August of 2007, Tr. 635, and again in May

9  of 2011, Tr. 256-57.  In December of 2010, Plaintiff again injured his left leg when

10 he slipped on ice and sustained a proximal tibia fracture in the metaphyseal area of

11 his left leg.  Tr. 638.  The second motor vehicle accident occurred in January of

12 2012, and Plaintiff sustained bilateral wrist fractures, a fracture of his mandible

13 bone, and a closed head injury.

14                   **V.    The ALJ's Findings**

15       The ALJ determined that Plaintiff was not disabled under the Social Security

16 Act and denied his application for SSI benefits.  Tr. 22-33.

17       **At step one**, the ALJ found that the Plaintiff had not engaged in substantial

18 gainful activity since February 7, 2011.  Tr. 24 (citing 20 C.F.R. § 416.971 *et seq.*).

19       **At step two**, the ALJ found Plaintiff had the following severe impairments:

20 status post-left lower extremity surgery, cognitive disorder likely substance-

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 7**

induced, and personality disorder, not otherwise specified. Tr. 24 (citing 20 C.F.R. § 416.920(c)).

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1.  Tr. 25 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

At **step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work and is able to stand or walk up to six hours in an eight-hour workday and sit for up to six hours in an eight-hour work day.  Tr. 27. In addition, the ALJ found that Plaintiff can occasionally climb ramps and stairs, and balance, stoop, kneel, and crouch, but must avoid crawling, climbing ropes, ladders, or scaffolds, and concentrated exposure to extreme cold and heat, humidity, vibration, and hazards.  *Id.*  With respect to Plaintiff's non-exertional limitations, the ALJ found that Plaintiff can perform simple and routine tasks but must be limited to brief superficial contact with the general public.  *Id.*  Vocational expert Diane Kramer CDMS testified at the hearing that an individual with the above-described residual functional capacity could not perform any of Plaintiff's past relevant work, Tr. 59-60, and based on this testimony, the ALJ found that Plaintiff is unable to perform his past relevant work, Tr. 31.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1    At **step five**, the ALJ found, after considering his age, education, work

2 experience, and residual functional capacity, that Plaintiff is capable of making a

3 successful adjustment to other work that exists in significant numbers in the

4 national economy.  Tr. 32-33.

5                              **VI.    Issues for Review**

6    Plaintiff contends that the ALJ erred by (1) failing to find that Plaintiff's

7 hepatitis B, hepatitis C, status post right distal tibia fracture, and status post

8 bilateral wrist fractures were severe impairments; and (2) improperly assessing

9 Plaintiff's residual functional capacity.

10                              **VII.   Discussion**

11    As an initial matter, although Plaintiff assigns error to the ALJ's findings

12 that his hepatitis B and hepatitis C are non-severe impairments, as the government

13 points out, ECF No. 12 at 2, he does not advance any arguments on this issue in his

14 opening brief.  Because Plaintiff has not argued the issue with specificity, the

15 Court need not address it.  *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533

16 F.3d 1155, 1161 n. 2 (9th Cir. 2008).  In any case, Plaintiff appears to have

17 conceded this point, as his reply brief contains a statement of issues that does not

18 assign error to the ALJ's severity findings with respect to Plaintiff's hepatitis B

19 and hepatitis C.  ECF No. 14 at 1.

20 \\

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 9**

## A. Step Two Severity Findings

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by finding that his right distal tibia fracture and bilateral wrist fractures were non-severe.  ECF No. 11 at 10-12.  The Commissioner responds that the ALJ properly found that Plaintiff's bilateral wrist fractures were non-severe, and that any error in the ALJ's severity finding with respect to Plaintiff's right distal tibia fracture is harmless.  ECF No. 12 at 2-6.

An impairment or combination of impairments can be found to be non-severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A finding that an impairment or combination of impairments are non-severe must be "'clearly established by medical evidence.'"  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28 (1985)).

### 1.  The ALJ Properly Found Plaintiff's Bilateral Wrist Fractures to be Non-Severe

The ALJ's finding that Plaintiff's bilateral wrist fractures are non-severe is clearly established by medical evidence.  Plaintiff fractured his wrists in a severe motor vehicle accident in January of 2012, and both wrists required surgical repair.  Tr. 660.  By February of 2012, Plaintiff's wrists had healed sufficiently to have his casts removed.  Tr. 491.  The treatment notes for that visit indicate that imaging revealed "good alignment," "abundant healing," and "adequate" fracture reduction.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

Tr. 493.  A bilateral upper extremity exam performed during that same visit

revealed normal findings, other than some right wrist tenderness.  Tr. 493.

Diagnostic imaging performed in May of 2012 confirmed that Plaintiff's fractures

had healed and were without significant radiographic complication.  Tr. 675.  The

few treatment records subsequent to Plaintiff's wrist surgery contain little, if any,

evidence that Plaintiff's bilateral wrist fractures impose ongoing functional

limitations that would affect his ability to engage in basic work activities.  The

treatment records that are available confirm the ALJ's conclusion that Plaintiff's

fractures have healed without significant complication.  *See* Tr. 493, 675, 679.

**2.  The ALJ Erred by Finding Plaintiff's Right Distal Tibia Fracture to be Non-Severe but the Error was Harmless**

In May of 2007, Plaintiff sustained traumatic injuries in a motor vehicle

accident.  In addition to the lower left extremity injuries the ALJ found to be

severe, Plaintiff also fractured his right distal tibia.  Although the ALJ does

consider that Plaintiff "fractured numerous bones" and has metal hardware in both

of his knees as a result of the 2007 accident, she did not specifically list or discuss

Plaintiff's right distal tibia fracture.  The lack of explanation accompanying the

ALJ's conclusion that Plaintiff's right distal tibia fracture is non-severe fails to

show that this conclusion is clearly established by medical evidence, and

accordingly is in error.

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 11**

1    Any error in ALJ Ausems's finding at step two, however, is harmless

2  provided that she considered functional limitations arising from each of Plaintiff's

3  impairments, both severe and non-severe, when assessing Plaintiff's residual

4  functional capacity.  *See* 20 C.F.R. § 416.945(a)(2) (requiring an ALJ to consider

5  all medically determinable impairments when assessing a claimant's residual

6  functional capacity); *see also Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007)

7  (holding that failure to consider an impairment at step two is harmless error where

8  the ALJ includes limitations arising from that impairment in his or her

9  determination of the claimant's residual functional capacity).  Because, as

10  discussed below, *infra* pp. 21-22, the ALJ properly assessed Plaintiff's residual

11  functional capacity based on the functional limitations supported by the record, any

12  error in failing to classify plaintiff's right distal tibia fracture as a severe

13  impairment at step two was harmless.

14    **B. Opinion Evidence**

15    Plaintiff challenges the weight accorded to every single medical opinion of

16  record.  First, Plaintiff contends that the ALJ improperly discounted the opinions

17  of treating physician Carla Smith M.D., treating physicians Ted Sousa M.D. and

18  Coy Fullen D.O. at the David C. Wynecoop Memorial Clinic, examining physician

19  Dennis Pollack Ph.d., and "other source" Karen Laemmie ARNP.  Second,

20  Plaintiff submits that the ALJ improperly accorded "substantial weight" to the

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 12**

opinions of non-examining physicians Alnoor Virji M.D., and Renee Eisenhauer Ph.d., who prepared the residual functional capacity assessment accompanying Plaintiff's denial on reconsideration.  The Commissioner responds that the ALJ properly weighed the conflicting medical opinions contained in the record and gave legally adequate reasons for the weight assigned to each opinion.

### 1. Physicians' Opinions

The Ninth Circuit has distinguished between three classes of physicians in defining the weight to be given to their opinions: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is given the most weight, followed by an examining physician, and then by a non-examining physician.  *Id.* at 803-831.  In the absence of a contrary opinion, a treating or examining physician's opinion may not be rejected unless "clear and convincing" reasons are provided.  *Id.* at 830.  If contradicted, a treating or examining doctor's opinion can be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at 830-31.  The controverting opinion of a non-examining physician, however, does not by itself constitute substantial evidence justifying the rejection of a treating or examining physician's opinion.  *Id.* at 831.

### a. The ALJ Properly Accorded Little Weight to the Opinion of Carla Smith M.D.

The ALJ accorded little weight to Dr. Smith's opinion that Plaintiff could only attend class once weekly for one and a half hours as a result of his bilateral wrist fractures, Tr. 494, because the opinion was given only a month after Plaintiff's accident and thus, did not reflect the improvement in Plaintiff's condition evidenced by subsequent treatment records, Tr. 24. Plaintiff argues that although the ALJ is correct that Dr. Smith opined on plaintiff's condition "just after the accident in which Plaintiff sustained his injuries," nothing in Dr. Smith's note indicates that the assessed limitations are of limited duration. ECF No. 11 at 11. The difficulty with this argument, however, is that the medical evidence corroborates the ALJ's conclusion that Dr. Smith's opinion regarding the severity of Plaintiff's limitations does not address his continued improvement post-surgery. Dr. Smith's opinion predates the removal of Plaintiff's casts, and, as detailed above, *supra* p. 10-11, post-surgery treatment records indicate that Plaintiff's condition improved dramatically. In light of the significant improvement in Plaintiff's condition subsequent to Dr. Smith's opinion concerning the limitations imposed by Plaintiff's bilateral wrist fractures, the ALJ's decision to accord little weight to that opinion is appropriate.

\\

\\

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

**b. The ALJ Properly Accorded Little Weight to the Opinions of Ted Sousa, M.D., and Coy Fullen, D.O., at the David C. Wynecoop Memorial Clinic**

In March of 2011, Dr. Sousa completed a functional assessment form for the Washington State Department of Social and Health Services. Tr. 303-04. Dr. Sousa indicated that Plaintiff's condition was expected to impair his ability to work for three months. Tr. 303. He opined that, during that period, Plaintiff would be able to stand for between one and two hours in an eight-hour work day, sit for eight hours, and occasionally lift ten pounds. Tr. 303. In August of 2011, Dr. Fullen completed the same form. Tr. 300-01. Dr. Fullen indicated that for 28 weeks, Plaintiff could stand for less than one hour in an eight-hour workday, sit for eight hours, and could not lift any weight. Tr. 300. The ALJ accorded little weight to the opinions of these physicians because "the opinions are not support [sic] by the medical evidence of record or the weight of the evidence."

Plaintiff's contention that the ALJ provided legally insufficient reasons for according little weight to Dr. Sousa and Dr. Fullen is unavailing. In the paragraphs immediately preceding the ALJ's analysis of Dr. Sousa's and Dr. Fullen's opinions, the ALJ discusses, in depth, the evidence that supports her findings concerning Plaintiff's exertional limitations. Tr. 28-29. As this discussion elucidates, evidence of Plaintiff's activities during the period of disability, including Plaintiff's ability to ride a four-wheeler, Tr. 315, and care for his father,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1 who has severe cancer, Tr. 47-48, undermine both doctors' opinions that Plaintiff's

2 impairments impose exertional limitations that render him disabled.  Moreover,

3 treatment records around the time of Dr. Sousa's and Dr. Fullen's evaluations of

4 Plaintiff reflect a significantly more positive prognosis of his condition.

5   In an examination of Plaintiff conducted on March 10, 2011, Dr. Sousa

6 indicated that despite some stiffness in the left knee, Plaintiff was doing well after

7 fracturing his left tibia in December of 2010.  Tr. 211.  The physical examination

8 conducted during that visit revealed no "remarkable erythema" and normal

9 strength to hip flexion and knee extension and flexion.  *Id.*  By April of 2011,

10 Plaintiff's treatment records indicate that he was ambulating without any problems

11 or pain.  Tr. 264.  Although Plaintiff required additional surgery in May of 2011

12 because of infection, Tr. 256, treatment records from June of 2011 indicate that

13 Plaintiff was walking, albeit with a bit of a limp, and that his pain was well-

14 controlled.  Tr. 249.  In September of 2011, the month after Dr. Fullen rendered his

15 opinion, Dr. Fullen noted that Plaintiff only suffered from occasional pain, Tr. 447,

16 and began to taper down Plaintiff's pain medication, Tr. 447, 451, & 455.  In

17 November of 2011, Dr. Fullen noted that Plaintiff's left knee had good range of

18 motion despite some pain and recommended that Plaintiff's pain medication be

19 tapered again in January of 2012.  Tr. 455.

20

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 16**

1    As the foregoing discussion demonstrates, Dr. Sousa's and Dr. Fullen's

2    opinions that Plaintiff's impairments impose disabling limitations are inconsistent

3    with Plaintiff's activities during the period of disability and his contemporary

4    treatment records, which provide a significantly more positive assessment of his

5    condition.  This inconsistency constitutes substantial evidence supporting the

6    ALJ's conclusion regarding Dr. Sousa's and Dr. Fullen's opinions of Plaintiff's

7    limitations:  that neither is supported by the medical record or the weight of the

8    evidence.

9          **c.  The ALJ Erred in According Little Weight to the Opinion of Examining Physician Dennis Pollack, Ph.D. but such Error was**
10    **Harmless**

11    Examining physician Dennis Pollack, Ph.D. conducted a psychological exam

12    on August 23, 2011, and provided an extensive report outlining Plaintiff's mental

13    impairments.  Dr. Pollack assigned Plaintiff a Global Assessment of Functioning

14    ("GAF") score of 50, Tr. 82—which indicates serious symptoms or any serious

15    impairment in social, occupational, or school functioning, AM. PSYCHIATRIC

16    ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th

17    ed., text revision 2000)—but did not provide a function-by-function assessment of

18    Plaintiff's abilities and limitations.  The ALJ discussed Dr. Pollack's findings at

19    length, but ultimately accorded little weight to Dr. Pollack's opinion because his

20

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 17**

1  findings "were reflective of undue reliance upon subjective allegations of an

2  individual trying to qualify for disability." Tr. 30.

3      Plaintiff takes particular exception to the ALJ's implication that Plaintiff

4  exaggerated his mental limitations during Dr. Pollack's evaluation, arguing that

5  because every claimant evaluated by a consultative examiner is "trying to qualify

6  for disability" the ALJ's explanation failed to provide a specific and legitimate

7  reason for according little weight to Dr. Pollack's findings.  This argument puts

8  undue emphasis on the portion of the ALJ's conclusion referencing Plaintiff's

9  desire to qualify for disability benefits.  The ALJ's determination that Dr. Pollack's

10  opinion should be accorded little weight is clearly based on a finding that his report

11  was based upon Plaintiff's subjective allegations, which the ALJ found to be "not

12  entirely credible." Tr. 31.

13      The problem with the ALJ's conclusion in this context is that Dr. Pollack's

14  opinion is premised, not on Plaintiff's subjective allegations, but instead on

15  clinically accepted objective diagnostic techniques: the mental status examination,

16  the Weschler Adult Intelligence Scale, the Minnesota Multiphasic Personality

17  Inventory, and the trail making test.  *See, e.g.*, *Atkins v.* Virginia, 536 U.S. 304,

18  309 n. 5 (2002) (noting that the Wechsler Adult Intelligence Scale test is the

19  standard instrument in the United States for assessing intellectual functioning);

20  *Wall v. Astrue*, No. C11-5308-JLR-JPD, 2012 WL 555250, at *6 (W.D. Wash.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 18**

1  2012) (indicating that mental status examinations and trail making tests constitute

2  "objective" medical evidence); and *Ryan v. Clarke*, 281 F. Supp. 2d 1008, 1032

3  (D. Neb. 2008) (noting that the Minnesota Multiphasic Personality Inventory is the

4  "gold standard" for objective psychological testing).  Moreover, the Minnesota

5  Multiphasic Personality Inventory is specifically designed to address the ALJ's

6  concerns about the accuracy of Dr. Pollack's findings by measuring, not only a

7  claimant's personality traits, but also possible malingering, *see Wedge v.* Astrue,

8  624 F. Supp. 2d 1127, 1131 (C.D. Cal. 2008).  Nowhere in Dr. Pollack's report

9  does he suggest that Plaintiff was feigning or exaggerating his symptoms.

10     A holistic review of Dr. Pollack's report reveals that his findings were based

11  primarily, if not completely, on the results of medically accepted objective

12  psychological testing.  As a result, the ALJ's conclusion that Dr. Pollack's findings

13  "were reflective of undue reliance upon [Plaintiff's] subjective allegations," is not

14  supported by substantial evidence in the record and accordingly, is in error.

15     The ALJ's error in according little weight to Dr. Pollack's opinion is

16  harmless, however, because the functional limitations reflected by Dr. Pollack's

17  findings were ultimately incorporated into the ALJ's determination of Plaintiff's

18  residual functional capacity.  The residual functional capacity determination

19  contained in the ALJ's decision is based on an assessment prepared by non-

20  examining, state agency physicians Dr. Virji and Dr. Eisenhauer.  *Compare* Tr. 27

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 19**

(ALJ's assessment of Plaintiff's residual functional capacity), *with* Tr. 88-92 (Dr. Virji's and Dr. Eisenhauer's joint assessment of Plaintiff's residual functional capacity); *see also* Tr. 29 (according substantial weight to Dr. Virji's and Dr. Eisenhauer's opinion).  The state agency physicians' assessment of Plaintiff's residual functional capacity fully incorporates the findings contained in Dr. Pollack's report.  Tr. 84-86.  Consideration of Dr. Pollack's findings translated to limitations to simple, repetitive tasks and superficial contact with others, Tr. 91, both of which the ALJ included in her assessment of Plaintiff's residual functional capacity.  Tr. 27.  Thus, despite the ALJ's erroneous rejection of Dr. Pollack's findings, the residual functional capacity determination contained in her decision adequately encompasses the functional limitations those findings reflect.  The ALJ's error in according little weight to Dr. Pollack's opinion was therefore inconsequential to the ultimate nondisability determination and accordingly is properly considered harmless.  *See Molina*, 674 F.3d at 1115.

### d.  The ALJ did not Err in According "Substantial Weight" to the Opinions of State Agency Physicians Dr. Virji and Dr. Eisenhauer

Plaintiff contends that the ALJ erred in according "substantial weight" to the opinions of non-examining physicians Dr. Virji and Dr. Eisenhauer.  Plaintiff submits that the ALJ's reliance on these opinions is erroneous because both doctors assessed Plaintiff's ability to work prior to his motor vehicle accident in January of 2012 in which he suffered additional injuries.  Review of the record

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**

reveals, however, that these injuries did not ultimately result in lasting symptoms

or functional limitations that undermine Dr. Virji's and Dr. Eisenhauer's opinions.

Records from after the January 2012 accident focus almost entirely on the

treatment of Plaintiff's bilateral wrist fractures, and, as discussed above, *supra* pp.

10-11, there is little, if any, evidence that those fractures impose ongoing

functional limitations that would affect Plaintiff's ability to engage in basic work

activities.  Without such evidence, Dr. Virji's and Dr. Eisenhauer's opinions retain

their efficacy, and accordingly the ALJ's reliance upon those opinions was proper.

### 2. The ALJ Properly Accorded Little Weight to the Opinion of Karen Laemmie ARNP

Plaintiff contends that the ALJ improperly rejected the "other source"

opinion of Karen Laemmie ARNP.  In disability proceedings, the opinion of an

acceptable medical source, such as a physician or psychologist, is given more

weight than that of an "other source."  20 C.F.R. §§ 404.1527 & 416.927; *Gomez

v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other sources" include nurse

practitioners, physicians' assistants, therapists, teachers, social workers, spouses

and other non-medical sources.  20 C.F.R. §§ 404.1513(d) & 416.913(d).  An ALJ

must give reasons germane to the "other source" testimony before discounting it.

*Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 2003).

A few days after Plaintiff's surgery in May of 2011 to address infection in

his left leg, Ms. Laemmie recommended left lower extremity weight bearing

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 21**

activity as tolerated.  Tr. 251-52.  The ALJ gave Ms. Laemmie's opinion no weight

because it was given in very close proximity to Plaintiff's surgery and thus, did not

reflect lasting functional limitations.  Tr. 29.  Despite Plaintiff's contention that

"there is nothing to indicate the limitations assessed would not last," the ALJ's

conclusion is corroborated by subsequent records that demonstrate improvement.

By June of 2011, treatment records indicate that Plaintiff was walking with only a

slight limp, that his pain was well-controlled, and that he was otherwise doing

well.  Tr. 247, 249.  The explanation provided by the ALJ for rejecting Ms.

Laemmie's opinion is both clearly germane to her testimony and supported by

substantial evidence.  Accordingly, the ALJ's rejection of Ms. Laemmie's opinion

was legally adequate.

## C. The ALJ's Assessment of Plaintiff's Residual Functional Capacity Accurately Reflects Plaintiff's Functional Limitations

Plaintiff contends that errors in the ALJ's analysis of the opinion evidence

resulted in a residual functional capacity assessment that does not include all of

Plaintiff's functional limitations.  As the preceding discussion indicates, however,

*supra* pp. 13-22, the ALJ committed only a single error with respect to her

evaluation of the opinion evidence—the improper rejection of Dr. Pollack's

report—and despite that error, her determination of Plaintiff's residual functional

capacity encompassed Dr. Pollack's findings.  An ALJ commits no error by failing

to include limitations from properly discounted evidence in his or her assessment

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 22**

of a claimant's residual functional capacity.  *Batson v. Comm'r of the Soc. Sec. Admin.,* 39 F.3d 1190, 1197 (9th Cir. 2004).  Here, the ALJ's determination of Plaintiff's residual functional capacity included all functional limitations supported by the record and excluded only those limitations contained in opinions that were properly discounted.  Accordingly, the ALJ properly assessed Plaintiff's residual functional capacity and his finding that Plaintiff is not disabled is supported by substantial evidence.

### VIII.  Conclusion

For the foregoing reasons, the Court finds the Commissioner's decision is free of legal error and supported by substantial evidence.  Therefore, Defendant's Motion for Summary Judgment is granted.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED.**

///

///

///

///

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23**

1          3. The District Court Executive is directed to enter judgment in favor of

2   Defendant and against Plaintiff.

3          **IT IS SO ORDERED.** The District Court Executive is directed to enter this

4   Order, forward copies to counsel, and **CLOSE** the file.

5          **DATED** this 8th day of February, 2016.

6

7                   *s/Robert H. Whaley*
                    ROBERT H. WHALEY
8            Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ~ 24**